IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ranel Cox., Jr., <br><br> Plaintiff, <br><br> vs. <br><br> Yamaha Motor Corporation, U.S.A.; <br> Yamaha Motor Co., Ltd.; <br> ABC Corporations 1 through 10; <br> John and Jane Does 1 through 10, <br><br> Defendants. | ) <br> ) No. CV-06-519-TUC-DCB(JCG) <br> ) <br> ) **REPORT AND RECOMMENDATION** <br> ) |

Pending before the Court is a Motion for Summary Judgment filed by Defendants Yamaha Motor Corporation, U.S.A. and Yamaha Motor Company, Ltd. (collectively "Yamaha") on January 30, 2008. (Doc. No. 32.) Yamaha moved for summary judgment on Plaintiff Ranel Cox, Jr.'s ("Cox") claims of product liability, negligence, and breach of warranty. (Doc. No. 33.) Cox filed a response on February 11, 2008. (Doc. No. 34.) The Magistrate Judge construed Cox's response as a motion for a continuance pursuant to Rule 56(f), Fed. R. Civ. P., denied the motion and ordered Cox to file a response to the Motion for Summary Judgment. (Doc. No. 37.) On April 8, 2008, Cox filed a document captioned "Plaintiff's Supplemental Opposition to Motion for Summary Judgment." (Doc. No. 38.) Meanwhile, on February 29, 2008, Yamaha had filed a timely reply to Plaintiff's first

response. (Doc. No. 36.) Yamaha also filed a reply to the supplemental opposition on April 17, 2008. (Doc. No. 40.)

Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin for a Report and Recommendation.[1] The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order granting Yamaha's Motion for Summary Judgment.

## Factual and Procedural Background

The undisputed facts are as follows.[2] Plaintiff Ranel Cox, Jr. was riding his 2004 Yamaha YZ125 motorcycle during a practice session on October 18, 2003, at the Verde Valley Motoplex motocross racetrack located in Verde Valley, Arizona. (DSOF at ¶ 1-2.) On the third or fourth lap of his practice session, Cox crashed his motorcycle while trying to execute the "finish line" jump, a "double" jump which consists of a "single" jump followed by a "tabletop" jump. (DSOF at ¶ 2.) As Cox attempted the "single" jump, the front of the motorcycle allegedly began to dip. (DSOF at ¶ 3.) This dipping caused him to land on the downslope of the "tabletop" jump with the motorcycle positioned perpendicular

---

[1] This case was originally filed in Pima County Superior Court and removed to Federal District Court based upon diversity jurisdiction. (Doc. No. 1.) The case was assigned to Judge Bury who referred the matter to Magistrate Judge Guerin for a Report & Recommendation. (Doc. No. 8.)

[2] LRCiv 56.1 requires a party opposing a motion for summary judgment to file a separate statement of facts "setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific, admissible portion of the record supporting the party's position if the fact is disputed." Cox did not comply with the requirements of LR Civ 56.1. Instead, Cox filed a Statement of Facts relevant only to his Rule 56(f) motion. The Statement of Facts consisted of three letters sent from defense counsel to Cox's counsel regarding the logistics surrounding the December 10, 2007 motorcycle inspection. Thus, Cox's Statement of Facts not only violates LRCiv 56.1 by not responding directly to Yamaha's Statement of Facts, but it does not contain any facts relevant to the pending Motion for Summary Judgment. Accordingly, the facts stated in Yamaha's Statement of Facts are deemed undisputed.

- 2 -

1   to the ground and the front-end making first contact. (DSOF at ¶ 3.) At impact, Cox was
2   ejected off of the motorcycle, over the handlebars, and sustained serious spinal injuries.
3   (DSOF at ¶ 4.)
4       On October 18, 2004, Cox and his parents, Ranel Cox, Sr. and Rochel Cox, filed an
5   action against Yamaha in Pima County Superior Court alleging product liability, breach of
6   contract (warranty), negligence and loss of consortium. (DSOF at ¶ 7.) The Court dismissed
7   the action for failure to timely serve defendants. (DSOF at ¶ 7.) Cox and his parents re-filed
8   the case in Pima County Superior Court on October 18, 2005, alleging essentially the same
9   causes of action that had previously been dismissed. (DSOF at ¶ 8.) Again, the case was
10  dismissed for failure to serve defendants. (DSOF at ¶ 8.) Cox filed this action for the third
11  time in Pima County Superior Court on May 31, 2006, alleging that the Yamaha motorcycle
12  involved in the accident was "defective and unreasonably dangerous" and asserting claims
13  against Yamaha for product liability, breach of warranties and negligence. (DSOF at ¶ 11.)
14  Based on an assertion of diversity jurisdiction, Yamaha removed the case from Pima County
15  Superior Court to Federal District Court on October 6, 2006. (Doc. No. 1.)
16      Although the case had been recently removed, on October 26, 2006, legal and
17  technical representatives for both Cox and Yamaha met cooperatively to inspect the
18  motorcycle at Southwest Mobile Storage in Phoenix, Arizona and to determine if there was
19  a defect in the motorcycle. (DSOF at ¶ 13.) The inspection was conducted by Patrick
20  Williams, a Product Validation Specialist at Yamaha Motor Corporation, U.S.A., and Rick
21  Stout, Cox's engineering expert. No evidence of a defect in the design, assembly, or
22  manufacture of the motorcycle's suspension system was found. (DSOF at ¶ 13-14.)
23      The parties agreed to a second inspection which was conducted on December 28, 2006
24  with representatives for both Cox and Yamaha present. (DSOF at ¶ 15.) Again, no defect
25  was found in the design, assembly, or manufacture of the motorcycle's suspension system.
26  (DSOF at ¶ 15.)
27
28

1  On January 4, 2007, the Magistrate Judge issued a Scheduling Order. (Doc. No. 14.) The deadline for Cox's Rule 26(a)(2) expert disclosures was set for April 4, 2007, with Yamaha's expert disclosures due 30 days thereafter. (Doc. No. 14.)

On March 30, 2007, the parties filed a joint motion and stipulation to continue the Court's pre-trial deadlines to allow time for further inspection of the motorcycle by the parties' respective experts. (Doc. Nos. 19-20.) Judge Guerin granted the parties a 90-day continuance of pre-trial deadlines, making Cox's Rule 26(a)(2) expert disclosures due on July 5, 2007. (Doc. No. 21.)

Despite the extended deadline, Cox was unable to gather the funds necessary to finance the additional motorcycle inspection. (DSOF at ¶ 19.) As a result, the July 5, 2007 deadline passed without any expert disclosure by Cox. (DSOF at ¶ 19.)

At the request of Cox, Yamaha agreed to another pre-trial extension, and the parties filed a joint stipulation on July 31, 2007 to extend pre-trial deadlines, including Cox's Rule 26(a)(2) expert disclosures. (Doc. No. 23.) Judge Guerin entered an Order granting an extension, thus postponing Cox's expert disclosure deadline to October 2, 2007. (Doc. No. 24.) The Order required that discovery be completed by January 7, 2008, and dispositive motions filed by February 4, 2008. (Doc. No. 24.)

The October 2, 2007 deadline passed without Cox filing any expert disclosure or requesting an extension of the deadline. (DSOF at ¶ 23.)

On October 16, 2007, Yamaha moved the Court to extend the time to submit its own Rule 26(a)(2) disclosures. (Doc. No. 25.) Cox did not oppose Yamaha's request and on October 23, 2007, the Court granted Yamaha's motion by allowing it until January 2, 2008 to file its expert disclosure. (Doc. No. 27.) In its Order, it was specified that all other deadlines would remain in effect. (*Id.*)

On November 1, 2007, Yamaha scheduled its expert inspection, disassembly and testing to take place on December 10, 2007. (DSOF at ¶ 27.) At that inspection, the motorcycle's suspension system and its component parts were inspected, disassembled, tested, and evaluated at the direction of Dr. Graeme Fowler, a Vice President and Principal

- 4 -

Engineer at Exponent, Thomas Carter of Carter Engineering, and Cox's expert, David Bosch, an engineer from Forensic Engineering, Inc. (DSOF at ¶ 30.) During the inspection, Cox pointed out to the experts the alleged "gap" in the suspension system that was the basis for his claim that the motorcycle was defective. (*Id.*)

After the inspection and in compliance with its own Rule 26(a)(2) obligations and deadline, Yamaha timely served its expert disclosure consisting of the reports by Dr. Fowler and Mr. Carter and identifying Patrick Williams, a Yamaha Product Validation Specialist, as a potential witness. (DSOF at ¶ 32.) In his report, Dr. Fowler found:

1. no evidence of any defect in the design, manufacture, or assembly of the motorcycle's suspension system,
2. the motorcycle's suspension operated normally with a full range of motion,
3. the "gap" was not a defect, but rather, an element of the suspension system's design that allows for lateral movement,
4. that other models of Yamaha motorcycles also had the same "gap" design to provide for lateral movement,
5. that the accident was most likely the result of rider technique or track condition, and
6. that there have been no other complaints, claims, warranty issues, or lawsuits alleging that the design of the YZ125 motorcycle's suspension was in any way defective due to the "gap." (DSOF at ¶ 33.)

Similarly, Mr. Carter concluded that there were no defects in the design, manufacture, or assembly of the motorcycle's rear suspension system. (DSOF at ¶ 34.)

Discovery closed on January 7, 2008. (Doc. No. 24.)

On January 10, 2008, Cox served his Initial Disclosure of Experts, which stated in relevant part:

> Plaintiff's experts, Dr. Dean Jacobson and Engineer Rick Stout have verbally notified plaintiff's counsel that further "dynometer" testing is required to try to duplicate plaintiff's explanation of what happened when the accident occurred and that such additional testing, which did not occur during the initial inspections, will definitely determine whether or not a defect exists in the design or manufacture of the suspension system.

(DSOF at 38.)

On January 24, 2008, Cox submitted Plaintiff's Amended Disclosure of Expert, substituting David Bosch, Ph.D. (the engineer from Jacobson's office who actually participated in the December 10, 2007 inspection) for Rick Stout; the disclosure consisted of a letter from Bosch, dated on January 18, 2008, stating that inspections to date did not identify any defects and recommending further testing. (DSOF at ¶ 39.)

On January 30, 2008, just prior to the dispositive deadline of February 4, 2008, Yamaha moved for summary judgment on each of Cox's claims, arguing that there was no issue of material fact with respect to Cox's product liability or negligence claims because Cox had failed to produce expert testimony supporting his claim that the motorcycle was defective. (Doc. No. 33.) Yamaha further contended that because Cox is unable to establish a prima facie case for strict product liability, his breach of warranty claim is not actionable. (*Id.*)

Cox filed an Opposition to the Motion and a Statement of Facts in Support of the Opposition. (Doc. Nos. 34 & 35.) In his Opposition to Defendants' Motion for Summary Judgment, Cox argued that additional discovery was required in order for Cox to adequately respond to Defendants' Motion for Summary Judgment. The Court construed Cox's response as a motion for a continuance pursuant to Rule 56(f), Fed. R. Civ. P., but denied the motion on the ground that Cox had not diligently pursued discovery, the discovery deadline had expired and Cox had failed to demonstrate that reopening discovery was warranted. (Doc. No. 37.) Accordingly, the Court ordered Cox to file a response to the Motion for Summary Judgment within fourteen days. (*Id.*)

On April 8, 2008, Cox filed a document captioned "Plaintiff's Supplemental Opposition to Motion for Summary Judgment." (Doc. No. 38.) The Opposition consisted of an affidavit provided by Cox, in which Cox states that he is a 21-year old who has been riding and repairing motorcycles for many years, that in his expert opinion the motorcycle at issue in this case had a defective rear suspension system and that he was injured as a result

- 6 -

1 of this defect.[3]  The affidavit further opined that a defect would be revealed if dynometer
2 testing was conducted on the motorcycle.  Yamaha replied to the supplemental opposition
3 on April 17, 2008.  (Doc. No. 40.)

4 Having determined that oral argument was not necessary to a proper decision in this
5 matter, *see Mahon v. Credit Bureau of Placer County, Inc.,* 171 F.3d 1197, 1200 (9th Cir.
6 1999) (explaining that if the parties provided the district court with complete memorandum
7 of law and evidence in support of their positions, ordinarily oral argument would not be
8 required), and after having reviewed the motions and responses, the Magistrate Judge
9 recommends that the District Court GRANT Yamaha's Motion for Summary Judgment.

## Summary Judgment Standard

11 In deciding a motion for summary judgment, the Court views the evidence and all
12 reasonable inferences therefrom in the light most favorable to the party opposing the motion.
13 *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Insurance Co.*
14 *of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

15 Summary judgment is appropriate if the pleadings and supporting documents "show
16 that there is no genuine issue as to any material fact and that the moving party is entitled to
17 a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,
18 322 (1986).  Material facts are those "that might affect the outcome of the suit under the
19 governing law." *Anderson,* 477 U.S. at 248.  A genuine issue exists if "the evidence is such
20 that a reasonable jury could return a verdict for the nonmoving party." *Id.*

21 A party moving for summary judgment initially must demonstrate the absence of a
22 genuine issue of material fact. *Celotex*, 477 U.S. at 325.  The moving party merely needs to
23 point out to the Court the absence of evidence supporting its opponent's claim; it does not
24 need to disprove its opponent's claim.  *Id.*; *see also* Fed. R. Civ. P. 56(c).

---

[3] The affidavit filed on April 8, 2008 was not signed; Cox provided the Court with a signed copy of the affidavit on April 9, 2008.  (Doc. No. 39.)

- 7 -

1    If a moving party has made this showing, the nonmoving party "may not rest upon the
2 mere allegations or denials of the adverse party's pleading, but . . . must set forth specific
3 facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also*
4 *Anderson*, 477 U.S. at 256; *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th
5 Cir. 1995). The nonmoving party may not "replace conclusory allegations of the complaint
6 or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*,
7 497 U.S. 871, 888 (1990).

**Discussion**

Cox's complaint alleges three causes of action: product liability, negligence and breach of warranty. Defendants argue that they are entitled to summary judgment on all of Cox's claims because: (1) Cox is unable to establish a prima facie case of either strict product liability or negligence, and (2) Cox's breach of warranty claim is invalid.

**(1)  Cox has failed to establish a prima facie case of strict product liability or negligence.**

The Court applies state law to a products liability claim brought in federal district court pursuant to diversity jurisdiction. *See Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1193 (9th Cir. 2007). Under Arizona law, in order to establish a prima facie case of strict product liability, Cox must provide evidence that: (1) the product is defective and unreasonably dangerous, (2) the defective condition existed when it left the defendant's control, and (3) the defective condition is the proximate cause of the plaintiff's injuries. *Rocky Mountain Fire and Cas. Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 292, 640 P.2d 851, 854 (Ariz., 1982). The elements of a negligence claim are the same as the elements of a strict liability claim with the exception that in order to prevail on his negligence claim, Cox must show that the defendant breached its duty of due care. *See Anguiano v. E.I. DuPont de Nemours and Co., Inc.*, 808 F.Supp. 719, 722 (D. Ariz. 1992). Thus, in order to prevail on either his strict product liability or his negligence claim, Cox must prove that the motorcycle was defective.

Cox has failed to present any evidence which would support a finding that the motorcycle was defective. Numerous examinations of the motorcycle have occurred, yet there is no scientific or mechanical evidence that a defect exists. Cox has failed to produce expert evaluations, engineering analysis, or engineering tests to support his contention of a defect. In fact, Cox's own expert, Dr. David Bosch, like Yamaha's experts, Dr. Graeme Fowler and Mr. Thomas Carter, concluded that there was no defect in the design, manufacture, or assembly of the motorcycle's rear suspension.

Cox is not an expert and his conclusory statements are insufficient to create a material issue of fact. Rule 702, Fed. R. Evid. provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Cox has failed to demonstrate that he is qualified to provide an expert opinion. Cox has not shown any specialized knowledge in suspension system design or vehicle engineering to support certification as an expert. Cox's description of his qualifications is sparse; his qualifications are stated in total as follows:

> My name is Ranel Cox, Jr. and I am the plaintiff in this action. I am 21 years of age and have been repairing and riding motorcycles for many years, including motorcycles essentially identical to the one which is the subject of the lawsuit. When I was deposed, I discussed my qualifications including the fact that I have raced motorcycles professionally.

(Doc. No. 39.) Cox fails to provide any facts which would demonstrate that his riding and general repair of motorcycles qualifies him as an expert in defects in the rear suspension system of any motorcycle, let alone the particular motorcycle at issue in this case. He does not describe any repairs that he has done with respect to the rear suspension, nor does he indicate that he has completed any study or training pertaining to the suspension system.

In addition, Cox fails to show that his opinion is supported by reliable principles and methods of testing, or any testing at all. *See Martinez v. Terex Corp.*, 241 F.R.D. 631 (D. Ariz. 2007) (declining to certify expert who did not conduct testing to support his theories, never had his theories peer reviewed, and whose opinion was generated for litigation). He provides no facts indicating that he has personally inspected or tested the motorcycle's suspension system or that he has actually observed a defect in the suspension system. Rather, he speaks generally of some defect, without any facts to support his conclusion that some part was defective, opining that the suspension would not have "stuck" if it did not contain a defect and that the defect "has to do with" the spacing or gap in the linkage. Cox acknowledges that the defect has not yet been revealed despite all of the testing conducted by the parties; he indicates his hope that the "defect will be revealed by dynometer testing." (Doc. No. 39.)  Discovery, however, is closed.

Although Cox is not required to produce expert testimony demonstrating that the motorcycle was defective in order to survive summary judgment on his strict product liability claim, s*ee Russell v. Volkswagen of America*, 147 Ariz. 160, 166-67, 709 P.2d 517, 523-24 (1985) (declining to require a plaintiff in a negligent design case to establish by expert testimony the usual conduct of other practitioners of defendant's profession and to prove, further, that defendant deviated from that standard); *see also Dietz v. Waller*, 141 Ariz. 107, 110, 685 P.2d 744, 747 (1984) ( "[p]laintiffs ... must be permitted to rely upon circumstantial evidence alone in strict liability cases ..." ),[4] he is required to present "specific facts showing that there is a genuine issue for trial." Rule 56(e)(2), Fed. R. Civ. P.*; see also Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988). As described above, the affidavit provided by Cox fails to satisfy this requirement. Other than specifying a general location of the alleged

---

[4] Although the Court applies federal law in determining whether an expert opinion is admissible, it looks to state law to determine whether expert testimony is required to support the causation element of the product liability claim. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1320 (9th Cir. 1995); *see also Martinez v. Terex Corp.*, 241 F.R.D. 631, 641 (D. Ariz. 2007).

- 10 -

1 defect, Cox's affidavit is no more specific than his complaint. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e) is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Cox's affidavit merely presents a conclusory *res ipsa loquitur* statement: "I was injured, therefore the motorcycle was defective." The defect alleged by Cox is purely speculative, and as such it does not demonstrate a genuine issue of material fact.

The Court is not required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury finding a verdict in favor of that party. *See Liberty Lobby*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). No reasonable jury would weigh the testimony of Yamaha's experts and *Cox's own expert* – all of whom are professional engineers and none of whom discovered a defect – against Cox's self-serving and conclusory testimony and find in favor of Cox. Because the evidence demonstrating that the motorcycle is free of defect is so utterly "one-sided" in favor of Yahama, Yamaha is entitled to prevail as a matter of law. *Id*. at 252.

Finally, to the extent that Cox's affidavit purports to be disclosure of an expert witness, it was disclosed after the October 2, 2007 expert witness disclosure deadline and after the close of discovery, and is therefore inadmissible. Even if Cox's affidavit is construed as disclosure of a fact witness, it is untimely, as it was disclosed after discovery closed on January 7, 2008. An opposing affidavit must set forth facts that would be admissible in evidence. Fed. R. Civ. P. 56(e). Rule 37(c), Fed. R. Civ. P., states that if a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion or at trial, unless the failure was substantially justified or harmless.

As Cox has not met the required burden by showing that there is a genuine issue of material fact with respect to a defect, his strict liability and negligence claims fail.

- 11 -

**(2)   Without a prima facie case of strict liability, Cox's breach of warranty claim is void.**

Under Arizona law, "the theory of liability under implied warranty has been merged into the doctrine of strict liability in tort, so that it is on this latter doctrine that the plaintiff's claim must stand or fall." *Scheller v. Wilson Certified Foods, Inc.*, 114 Ariz. 159, 161, 559 P.2d 1074, 1076 (Ariz.App. 1976). Due to the merger, no contract is required for there to be a breach of warranty claim because "liability is not assumed by agreement but imposed by law," meaning that liability is not "governed by the law of contract warranties but by the law of strict liability in tort." *Wetzel v. Commercial Chair Co.*, 18 Ariz.App. 54, 56, 500 P.2d 314, 316 (Ariz.App. 1972). Consequently, because Cox is unable to establish a prima facie case for strict product liability, his breach of warranty cause of action is not actionable. In sum, Cox has not presented sufficient evidence of a prima facie case of strict product liability or negligence to withstand Defendant's Motion for Summary Judgment.

### Recommendation

For the foregoing reasons, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order GRANTING Defendants' Motion for Summary Judgment (Doc. No. 32).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. Any objections filed should use the following case number: **CV-06-519-TUC-DCB**. If objections are not timely filed, they may be deemed waived.

DATED this 19th day of May, 2008.

Jennifer C. Guerin
United States Magistrate Judge